IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| CHARLENE M. BARRY GREEN,[1] | § |
|     PLAINTIFF, | § |
| | § |
| VS. | §   CIVIL ACTION NO. 4:06-CV-0685-Y |
| | § |
| MICHAEL J. ASTRUE, | § |
| COMMISSIONER OF SOCIAL SECURITY, | § |
|     DEFENDANT. | § |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

A.    STATEMENT OF THE CASE

Plaintiff Charlene M. Barry Green filed this action under Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits under Title II and supplemental security income or SSI benefits under Title XVI of the Social Security Act. She applied for SSI benefits on June 20, 2003, and for disability insurance benefits on July 3, 2003, with an alleged disability onset date of April 16, 2003. (Tr. 52, 76). Her insured status continues through at least

---

[1] The administrative record reflects that the plaintiff's first name is spelled "Charleen," but the civil cover sheet and complaint filed to initiate this action spell her first name as "Charlene."

2009. (Tr. 55).

After her applications were denied both initially and on reconsideration, Green requested a hearing before an administrative law judge (the "ALJ"). ALJ J. Frederick Gatzke held a hearing on December 16, 2005, in Fort Worth, Texas, (Tr. 451), and on March 10, 2006, the ALJ issued a decision that Green was not disabled and was not entitled to disability insurance or SSI benefits. (Tr. 14-23). The Appeals Council denied Green's request for review of her case, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 6).

B.  STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is not severe if it has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). At the third step, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the appendix to

the regulations. *Id.* §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198. If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A finding at any point in the five-step process that a claimant is disabled or not disabled is conclusive and terminates the analysis. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id*. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.*

This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C.  ISSUES

Green contends that the ALJ's determination at Step Two that she has no severe mental impairment is a result of legal error and unsupported by substantial evidence.

D.  ADMINISTRATIVE RECORD

    1.  Treatment History[2]

Green sought counseling for depression after the death of her mother in 1996, and was prescribed Prozac and Ativan to relieve depression and anxiety. (Tr. 130, 460). Her physician later changed her prescription to Elavil because of its dual function as an antidepressant and pain reliever. (Tr. 309, 343, 460-61). Internist Richard Brittingham included depression among his diagnoses when he assumed treatment of Green in November 2002, and he continued to prescribe Elavil for management of Green's symptoms. (Tr. 239–50).

In September 2003, Gregory Morton, M.D., performed an internal medicine evaluation as part of the disability determination process. He noted that Green had episodes of recurrent depression and a history of substance abuse, for which she had attended a rehabilitation program, but she reported no panic attacks, suicide ideations, or suicide attempts. (Tr. 283, 309).

State agency psychological consultant Stephen Miller, Ph.D., considered the medical evidence available as of October 2003. Miller found that Green's mental impairment was not severe

---

[2] Green's complaints focus on the ALJ's determination that her mental impairment is not severe, not the ALJ's assessment of her physical impairments, and the review of her medical history will be limited accordingly.

and selected the "Impairment(s) Not Severe" choice on the printed form approved for use by state agency medical consultants. (Tr. 291–304).

After moving from Oklahoma to Texas in 2004, Green initiated treatment with internist Michael Adamo, D.O., who noted that Green's psychiatric history was "significant for depression." (Tr. 343–45). Green reported that she was taking Elavil for migraine pain, but the medication caused weight gain. (Tr. 343).

On June 16, 2004, Valerie Meshack, M.D., performed a consultative psychiatric evaluation. (Tr. 308). Green confided that she was experiencing symptoms of hopelessness, decreased self-worth, and sadness, and stated that her depression was sometimes so severe as to render her non-functional. (Tr. 309). She had recently started a part-time job as a cashier and worked twenty to thirty hours per week, but the work caused a significant amount of pain. She was capable of performing most daily activities except for those that required reaching above her head. Her hobbies included singing in a church choir, spending time with her family, and watching movies. With medication, she was able to sleep seven or eight hours each night. Her reported symptoms included anhedonia and decreased energy. (Tr. 309).

Meshack noted that Green described her mood as depressed, with a congruent affect. (Tr. 310). Although Green's multiple medical problems impacted her significantly, Green's attention and concentration were intact, her flow of thought was logical and coherent, and there was no flight of ideas, no auditory or visual hallucinations, no paranoid or delusional thinking, and no suicidal or homicidal ideation. (Tr. 310-11). Meshack's diagnostic impression was major depressive disorder, severe, recurrent. Meshack assessed Green's current global assessment of functioning (GAF) score

as 45, with a past score of 60.[3] Green's prognosis was guarded because of her multiple medical problems, and Meshack opined that Green would benefit from more specialized pharmacologic and therapeutic intervention. (Tr. 311).

Two weeks after Dr. Meshack's consultative psychiatric examination, a non-examining state agency medical consultant, Mehdi Sharifian, M.D., reviewed Green's claim at the reconsideration level of review. (Tr. 312–29). Sharifian assessed Green's depression as causing mild restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, and pace; and "one or two" episodes of decompensation. (Tr. 326). Consistent with Meshack's report, Sharifian described Green's mental impairment as a major depressive disorder, severe, recurrent. (Tr. 319). Sharifian selected "RFC Assessment Necessary" in the Medical Disposition section of the form approved for use by state agency medical consultants, and placed no mark next to the selection for a non-severe impairment. (Tr. 316).

2.      ALJ Decision

The ALJ found that Green had not engaged in substantial gainful activity since her alleged onset date, and dismissed her part-time job in 2004 as an unsuccessful work attempt. (Tr. 15). The ALJ also ruled that Green had a number of physical ailments that were severe, but did not meet or equal the criteria of any of the impairments listed in Appendix 1. (Tr. 22). With respect to Green's mental impairment, the ALJ reviewed Green's psychiatric history and found that Green had mild

---

[3] A GAF score is a standard measurement of an individual's overall functioning level with respect to psychological, social, and occupational functioning. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994)(DSM-IV). A GAF score of 41 to 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job). *Id.* at 34. A GAF score of 51 to 60 reflects moderate symptoms or moderate impairment in functioning. *Id.*

restriction in her activities of daily living; mild difficulty maintaining social functioning; mild difficulty with concentration, persistence, or pace; and no evidence of any repeated episodes of decompensation of extended duration. (Tr. 20). Based on these findings, the ALJ concluded that Green's mental impairment was not severe.

The ALJ also considered the functional capacity proposals issued by the state agency medical consultants at the pre-hearing stage, which determined that Green had the ability to remember simple and complex instructions and work-like activities, sustain an ordinary routine without special supervision, request assistance, and ask simple questions. (Tr. 19). He declined to accord significant probative weight to the state agency determinations because the record contained new and material evidence and Green's own testimony, which had not been available to the state agency medical consultants. (Tr. 19). The ALJ subsequently decided that Green was limited to a modified range of sedentary work activity, which precluded her from performing her past relevant work, but she retained the ability to perform other work existing in significant numbers in the national economy. The ALJ concluded that Green was not disabled within the meaning of the Social Security Act. (Tr. 21-22).

D. DISCUSSION

Green contends that the ALJ did not weigh the state agency psychiatrist's medical assessment in accordance with the regulations, and she asserts that this failure was prejudicial because the ALJ prematurely halted the assessment of her mental impairment at Step Two of the sequential evaluation process. She further contends that the ALJ's determination that her mental impairment was not severe is unsupported by substantial evidence.

The Social Security disability regulations outline a process (referred to as "the technique") to be used for evaluation of mental impairments. First, symptoms, signs, and laboratory findings are evaluated to determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). Once an impairment is found, the administration will rate the degree of functional limitation resulting from the impairment. *Id*. §§ 404.1520a(b)(2), 416.920a(b)(2). Four broad functional areas are recognized: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, and pace; and (4) episodes of decompensation. *Id*. §§ 404.1520a(c)(3), 416.920a(c)(3). After rating the claimant's functional limitations, the administration determines whether the impairment is severe or not severe given the degree of functional loss found in the four given areas. *Id*. §§ 404.1520a(d), 416.920a(d). When the degree of mental limitation in the four given areas is none or mild, the mental impairment is generally not found to be severe unless the evidence otherwise indicates more than minimal limitation in the claimant's ability to perform basic work activities. *Id*. §§ 404.1520a(d)(1), 416.920a(d)(1).

The first state agency medical consultant to review Green's applications found only mild or no restrictions in her functioning in the four given areas, and accordingly, found Green's mental impairment was not severe. On reconsideration, state agency physician Mehdi Sharifian, M.D., reviewed Green's applications. Sharifian found Green to be mildly impaired in her daily activities and social functioning, but also found that Green had moderate difficulty maintaining concentration, persistence, or pace, and that she had experienced one or two episodes of decompensation (each of extended duration). His findings with respect to the four broad areas of functioning are equivalent to a finding of a severe mental impairment, which is also reflected in his determination that a

residual functional capacity assessment was required.

Green asserts that the ALJ erred by giving inadequate attention and weight to Sharifian's opinions. Findings of fact made by state agency medical and psychological consultants regarding the nature and severity of an individual's impairments are treated as expert opinion evidence from non-examining sources at the administrative hearing and Appeals Council levels of review. 20 C.F.R. §§ 404.1527(f), 416.927(f); SOCIAL SECURITY RULING 96-6p. The administrative law judge and the Appeals Council are not bound by the state agency physicians' opinions, but may not ignore them and must explain the weight given to these opinions in their decisions. SOCIAL SECURITY RULING 96-6p.

Social Security Rulings are published under authority of the Commissioner and are binding on the Administration. *Hall v. Schweiker*, 660 F.2d 116, 119 n.4 (5th Cir. [Unit A] 1981)(per curiam). An agency must follow its own procedures, even if those procedures are more rigorous than what would otherwise be required. *Hall*, 660 F.2d at 119, *cited in Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000). Should the agency violate its internal rules and prejudice result, the proceedings are tainted and any action taken cannot stand. *Hall*, 660 F.2d at 119.

In his decision, the ALJ noted that he had considered the functional capacity proposals issued by the state agency medical consultants, but did not give them significant probative weight in light of new evidence and the claimant's testimony. (Tr. 19). Green argues that this discussion is insufficient because it pertains to the Step Four issue of her residual functional capacity, not the ALJ's determination at Step Two, and because the ALJ discounted Sharifian's opinion without

applying or weighing the specific factors identified in the regulations.[4]

The ALJ's decision reflects that he understood his duty to consider the earlier determinations of the state agency medical consultants, although he did not expressly refer to Sharifian's application of the psychiatric review technique. The ALJ is required to consider a number of factors affecting the weight given to medical source opinions, but there is no judicial or administrative requirement that the administrative decision include a detailed discussion of each of these factors as part of the explanation of the weight assigned to the opinions submitted by state agency medical consultants.[5] *See Hammond v. Barnhart*, 124 Fed. App'x 847, 851 (5th Cir. 2005); *Gonzales-Sargent v. Barnhart*, 2007 WL 1752057, at *8 (W.D. Tex. June 15, 2007).

Even if the ALJ did not adequately explain the weight given to Sharifian's opinion, Green does not establish sufficient prejudice to justify overturning the Commissioner's decision. The application of the special technique is mandatory at each level of the administrative process, and a review of the ALJ's decision reflects that the ALJ substantially complied with the technique when that responsibility was assigned to him. (Tr. 20). The ALJ summarized the history of Green's mental impairment, including the minimal treatment that she apparently required, before addressing

---

[4] These factors include the length of the treatment relationship, frequency of examination, nature and extent of the treating relationship, evidence supporting the opinions, the consistency of those opinions, and medical specialization. 20 C.F.R. §§ 404.1527(d), 416.927(d). The regulations provide progressively more rigorous tests for weighing opinions as the relationship between the source of the opinion and the individual becomes weaker. Social Security Ruling 96-6p.

[5] The ALJ is required to perform a detailed analysis of the factors outlined in the regulations before rejecting a *treating* source opinion. *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). *See also Beasley v. Barnhart*, 191 Fed. App'x 331, 336 (5th Cir. 2006).

the four broad areas of functioning.[6] The ALJ found mild restrictions in activities of daily living and social functioning, which comports with Sharifian's findings and the determination of the first state agency medical consultant. The ALJ, however, further found that Green had no more than mildly impaired concentration, persistence or pace, and that the evidence did not demonstrate any episodes of decompensation for extended periods.[7] (Tr. 326).

Green complains that the ALJ improperly substituted his own lay opinions for Sharifian's opinions. Medical consultants are responsible for assessing medical severity at the initial and reconsideration levels, but the ALJ is responsible for applying the special technique at the hearing level of review with or without expert assistance. 20 C.F.R. §§ 404.1520a(e), 416.920a(e). The ALJ may consult a medical expert for assistance in applying the technique, but Green has not demonstrated that the ALJ erred in not doing so here.

Green argues that a finding of non-severity is inconsistent with the consultative examination because Meshack assigned GAF scores reflecting moderate to severe symptoms. Green does not cite any authority suggesting that a particular GAF score is a determinative measure of a claimant's disability or should be viewed in isolation and without regard to other evidence in the record.[8] And despite the GAF score assigned, Green's performance during the mental status examination reflects

---

[6] Green complains because the ALJ did not expressly state that she has a medically determinable mental impairment, but the fact that the ALJ proceeded to the remaining steps of the technique demonstrates that the ALJ implicitly made such a finding.

[7] Green complains that the ALJ did not identify a specific number of episodes of decompensation in her history. In finding no evidence to support any such episodes, the ALJ effectively identified the number of episodes as zero.

[8] The Commissioner has denied that there is a direct correlation between GAF scores and the severity requirements in the listings for mental disorders. *See generally* Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50765 (Aug. 21, 2000).

few if any deficits.

Green also does not point to any medical evidence undermining the ALJ's determination that her mental impairment had not resulted in any extended episodes of decompensation. She was maintained on the same medication for years without any other significant psychiatric intervention,[9] and worked part-time after her alleged onset date until pain and physical limitations caused her to quit. (Tr. 20). *See generally* 20 C.F.R. Part 404, Subpart P, app. 1, § 12.00(C)(4) (defining episodes of decompensation as exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning).

Green contends that the ALJ unreasonably relied on the fact that she had not been treated by a mental health professional during the relevant period. The special technique process provides for a longitudinal approach that considers multiple issues and all relevant evidence, including how the claimant's functioning may be affected by the chronic nature of the disorder, medication, and other treatment. 20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1). It is reasonable to consider a claimant's treatment history, or lack of treatment, as some proof–in conjunction with other evidence–of the severity of a particular impairment so long as there is no indication that treatment was unavailable for financial or other reasons. *Cf.* SOCIAL SECURITY RULING 82-59 (noting that inability to afford treatment, and for which free community services are unavailable, is an acceptable reason for failing to follow prescribed treatment to remedy a disabling impairment). *See, e.g., Bennett v. Barnhart*, 264 F. Supp.2d 238, 256 (W.D. Pa. 2003)(criticizing ALJ for relying on lack of treatment when financial

---

[9] Green asserts that the ALJ erroneously stated that Brittingham's records reflect "no additional treatment of medication," (Tr. 20), when she was actually maintained on Elavil through the date of the hearing. Despite some ambiguity in the ALJ's statement, the decision reflects that the ALJ was aware that Green was taking anti-depressant medication. (Tr. 20).

considerations had precluded claimant from seeking treatment). The ALJ did not err in considering Green's lack of participation in a formal mental health treatment program as evidence of a non-severe mental impairment.

The ALJ fulfilled his responsibility to consider and weigh the state agency medical consultant's determinations, but even if the ALJ had failed in this regard, Green does not demonstrate prejudice as a result of any alleged deficiency. The ALJ's decision followed the required special technique, and his assessment of Green's depression as a non-severe mental impairment is supported by substantial evidence.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until December 5, 2007. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made.

*See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until December 5, 2007 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED NOVEMBER 14, 2007.

    /s/ Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE